IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROGER S. BRYNER,<br><br>               Plaintiff,<br><br>vs.<br><br>SALT LAKE COUNTY, GLORIA MILLER, JEFFREY POTTER, BILLY ROMERO, and JOHN DOES 1 - 3,<br><br>               Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:06 CV 377 (TC) |

       Plaintiff Roger Bryner brought this lawsuit under 42 U.S.C. § 1983, claiming that deputies with the Salt Lake County Sheriff's Office used excessive force when they were called to a domestic violence incident at the Bryner residence. Two of the deputies, Gloria Miller and Jeffrey Potter, have moved for partial summary judgment. Because the court concludes that no reasonable jury could find that Deputy Miller or Deputy Potter used excessive force, the motion is GRANTED.[1]

---

[1] Mr. Bryner is not asserting a separate § 1983 claim based on the fact that during the arrest, his pants fell off. As Mr. Bryner's counsel explained in his pleadings and at the hearing, this is just one of the facts relevant to issue of the reasonableness of the deputies' actions. For that reason, Defendants' motion for summary judgment on the reasonableness of Mr. Bryner's seizure in light of his partial nudity is DENIED as moot. (Docket No. 118.)

**BACKGROUND**[2]

An argument broke out between Mr. Bryner and his wife, Svetlana, while the two were having dinner on March 9, 2004. At some point about three hours into the fight, Mrs. Bryner went to her bedroom and locked the door. Mr. Bryner broke the lock and went into the bedroom. Mrs. Bryner walked past Mr. Bryner and out of the house. Mr. Bryner left the home and drove away in his car.

Mrs. Bryner had called the Sheriff's Office before she left. The dispatcher relayed the information that there had been a domestic violence call, that there was property damage, and that the suspect, Mr. Bryner, was possibly intoxicated and leaving the scene. Deputy Miller was the first officer to respond, followed quickly by Deputy Potter.

When the deputies arrived at the Bryner home, Mrs. Bryner was outside with her children. Deputy Miller went to talk to Mrs. Bryner. According to Mr. Bryner, Mrs. Bryner had told Deputy Miller that Mr. Bryner was very intoxicated, armed and dangerous. Shortly thereafter, Mr. Bryner returned to the home and parked his car in the garage.

After he had turned off the car and as the electronic garage door was closing, Mr. Bryner saw Deputy Potter coming into the garage with Deputy Miller close by. (Throughout the incident, the only lighting came from the Bryner's porch light, the light inside the garage, flashlights, and other lights that the officers had with them.)

Mr. Bryner got out of the car, and Deputy Potter told him to turn around and put his hands on the car. Despite the cramped space in the garage, Mr. Bryner, a large man who weighs 290 pounds, complied. Noting the lack of space, Deputy Potter said, "I'm going to handcuff you

---

[2]Because the court must view the evidence in the light most favorable to the non-movant, Mr. Bryner, the statement of facts is drawn primarily from Mr. Bryner's deposition and affidavit testimony.

to get you out of here." (Roger S. Bryner Dep. Tr. 98.) Mr. Bryner was arrested without incident just before 10:30 p.m. Deputy Potter walked out of the garage and instructed Mr. Bryner to follow.

Mr. Bryner took a few steps and said, "I need some help. My pants are falling down." (Id., 77.) He was wearing baggy jeans without a belt, and his pockets were loaded with keys and a wallet. Deputy Potter commanded Mr. Bryner to walk forward. Mr. Bryner took a few more steps, stopped, and refused to go forward. He warned, "My pants are falling. I can't go forward." (Id., 103.) Deputy Potter again ordered him to move forward. Mr. Bryner did, and his pants fell down around his ankles. Although he was wearing a long shirt, he was not wearing underwear.

Deputy Potter ordered Mr. Bryner to pull his pants up. Mr. Bryner, who was handcuffed, said, "Does it look like I can pull up my pants[?]" (Id., 108.) Deputy Potter, who "seemed very annoyed," pulled out his Taser and said, "Do what I say or I am going to taser you." (Id., 78.) Mr. Bryner again refused to pull up his pants, and Deputy Potter ordered Mr. Bryner to just move forward without the pants.

After Mr. Bryner was finally outside the garage, Deputy Potter told him to get on the ground. At this point, Mr. Bryner noticed that his children and wife were standing outside of the house, and he became "rather upset that my children were seeing me in the driveway without my pants on." (Id., 110.) Instead of getting on the ground, he demanded that Deputy Potter get the pants.

Deputy Potter forced Mr. Bryner face down onto the driveway. Deputy Miller rushed over and put his knee on Mr. Bryner's back. According to Mr. Bryner, he was "struggl[ing]," trying to "roll over" onto his side, a less painful position. (Id., 114-17.) But the deputies were

"were on top of [him], basically forcing [him] down harder." (Id., 114-15.) The deputies continued to tell Mr. Bryner to stay down. Although Mr. Bryner's deposition testimony is not entirely clear, it seems that Deputy Potter was the officer who hit him in the back. (Id., 78.) Deputy Miller held Mr. Bryner's head down. When Mr. Bryner tried to lift his head, one of the deputies hit him in the back of the head with a hard object.[3]

After Mr. Bryner noticed that his wife and children had gone inside, he told the officers, "I'm not going to get up. I'm not going to resist or anything. Just give me my pants." (Id., 120-21.) Deputy Miller and Deputy Potter immediately stood up and left Mr. Bryner lying in the driveway for a few minutes. The officers, who noticed that his head was bleeding, called for backup and for assistance from the Emergency Medical Technicians (EMT).

Deputy Billy Romero, responding to the call for additional backup, arrived at the scene. After he spoke with Deputy Miller and Deputy Potter, the three officers came over to Mr. Bryner and carried him from the driveway to the grass: Deputy Potter was on Mr. Bryner's left side, Deputy Romero was on his right side, and Deputy Miller grabbed his feet. Although Mr. Bryner admonished the officers to be gentle because he had previously injured his shoulder, Deputy Romero was "quite rough." (Id., 79.)

The officers left Mr. Bryner in the grass. The EMT arrived by 10:38 to treat Mr. Bryner's injuries. He had suffered contusions and lacerations on his head, and his toe was bleeding. Some of the officers asked Mr. Bryner if he had been drinking and whether he had a gun or any other weapons. Mr. Bryner denied having a weapon. But in response to all other questions, he kept repeating "over and over again[,] 'I want my pants, and I'd like to talk to a lawyer." (Id.,

---

[3]In his deposition testimony, Mr. Bryner did not identify which deputy struck him. In his affidavit, he suggests that it was Deputy Potter.

78.) At some point, one of the officers placed shackles on Mr. Bryner, and Deputy Miller shined a flashlight on him.

While Mr. Bryner was still lying in the grass and with none of the other deputies present, Deputy Romero came over and told him to sit up. Mr. Bryner refused and explained that he needed pants. Deputy Romero said, "Sit up. Do as I say." (Id., 79.) Mr Bryner refused again and demanded his pants or something to cover him up. Deputy Romero grabbed Mr. Bryner, who was still in handcuffs, by his wrists and pulled up on his arms. Mr. Bryner screamed in pain. With Deputy Romero's help, Mr. Bryner sat up. He asked for his pants again. Deputy Romero pulled Mr. Bryner's arms over his head, "far beyond the normal range of movement," which injured his shoulder. (Id., 80.)

Deputy Potter came over to help Deputy Romero lift Mr. Bryner to his feet and put him in the police car. They grabbed Mr. Bryner under his arms and lifted him. Mr. Bryner, wearing shackles, shuffled to the police car. As the officers placed Mr. Bryner in the backseat, he complained that his handcuffs were too tight. Although Deputy Romero said that he would loosen them, he "actually pushed them tighter" and "gouged" Mr. Bryner's thumbnails with "a metal object of some sort." (Id., 81.) Mr. Bryner, now seated in the backseat, leaned back "to try and alleviate the pain" and hit Deputy Romero with his head. (Id.)[4]

Deputy Potter and Deputy Romero drove Mr. Bryner to the police station. They did not provide Mr. Bryner with a pair of pants or anything to cover up with. He arrived at the jail before 11:30 p.m. Mr. Bryner alleges that he sustained multiple injuries.

---

[4] Mr. Bryner noted that Deputy Romero was the only officer who tried to "maliciously" hurt him. (Id., 148.)

**ANALYSIS**

Mr. Bryner contends that Deputy Miller and Deputy Potter used unreasonable and excessive force in violation of the Fourth Amendment. Deputy Miller and Deputy Potter move for summary judgment, asserting that they are entitled to qualified immunity because, even when viewed in the light most favorable to Mr. Bryner, the evidence does not show that the deputies used excessive force.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825 (10th Cir. 2008). As the moving parties, Deputy Miller and Deputy Potter bear the burden of demonstrating that they are entitled to summary judgment. Mr. Bryner, as the nonmoving party, is given "wide berth to prove a factual controversy exists." Davidson v. Am. Online, Inc., 337 F.3d 1179, 1182 (10th Cir. 2003) (quotation omitted). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." Cassady v. Goering, 567 F.3d 628, 634 (10th Cir. 2009) (quoting Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir. 2000)). "The plaintiff must show (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." Id. The court considers the evidence in the light most favorable to the nonmoving party. Id.

**A.     Unreasonable or Excessive Force**

Claims of excessive or unreasonable force are analyzed under the Fourth Amendment's objective reasonableness standard. Cordovo v. Aragon, __ F.3d __, 2009 WL 1707919, at *3 (10th Cir. 2009); Weigel v. Broad, 544 F.3d 1143, 1158 (10th Cir. 2008). A court must consider

whether "the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." Id. at 1151. The reasonableness inquiry depends on several factors including the alleged crime's severity, the threat posed by a suspect, and the suspect's efforts to resist or evade arrest. Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005). Reasonableness is ultimately viewed "'from the perspective of a reasonable officer on the scene,' who is 'often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'" Cardova, 2009 WL 1707919, at *3 (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

Mr. Bryner contends that Deputy Potter used excessive force in several ways: refusing to help Mr. Bryner pull up his pants, forcing him down on the driveway, restraining him by kneeling on him and hitting him on the back and head, and refusing to give him pants throughout the incident. His claim of excessive force against Deputy Miller rests on his claims that she pushed his head down against the driveway, shined her flashlight on him when he was partially nude, and refused to give him his pants.[5]

The starting point in deciding whether the deputies used excessive force is considering what the dispatcher had told the deputies: They were told that a heated incident had occurred at the home, which resulted in property damage, and that the suspect, Mr. Bryner, was possibly intoxicated. Then, once they had arrived at the scene, Mrs. Bryner told the deputies that her husband was "heavily intoxicated" and "dangerous." (Roger S. Bryner Dep. Tr. 125.) She also

---

[5]Mr. Bryner does not argue and there is no evidence in the record to suggest that Deputy Miller or Deputy Potter were involved with Deputy Romero's challenged actions. Deputy Romero does not ask the court to grant summary judgment. Accordingly, the court does not consider the reasonableness of his actions.

told the officers that he had weapons, including a gun.

Next, when Mr. Bryner returned home, he parked in the garage and immediately tried to close the automatic garage door. Although Mr. Bryner claimed that he did not notice the presence of police until Deputy Potter actually walked up to the car in the garage, an officer could have reasonably assumed that Mr. Bryner was trying to evade an encounter with law enforcement, especially considering that dispatch had indicated Mr. Bryner was leaving the scene when the police were first called.

Once Mr. Bryner was out of his car, Deputy Potter arrested him in the garage without incident. But Mr. Bryner soon began to refuse to follow any of Deputy Potter's orders. Although Mr. Bryner argues that he was justified in doing so, he refused Deputy Potter's orders to walk forward and to pull up his pants as he moved from the garage to the driveway. Once outside of the garage, Mr. Bryner refused to get on the ground as ordered. And Mr. Bryner further admitted that he became "rather upset," when he noticed that his wife and children had seen him in handcuffs and partially nude. (Id., 110.)

Considering the circumstances, a reasonable officer could have believed that Mr. Bryner posed a real and immediate threat to the safety of the deputies and to Mrs. Bryner and the children.[6] See Graham, 490 U.S. at 386 (concluding a court must pay careful attention to "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"); Cortez v. McCauley, 478 F.3d 1108, 1128 (10th Cir. 2007) (noting that a court must "consider officer safety concerns and whether the suspect cooperates or resists"); cf. Silvan W. v. Briggs, No. 07-4272, 2009 WL 159429, at *6 (10th Cir. Jan. 23, 2009) (concluding that the officers were

---

[6]Another factor that undoubtedly lead to the deputies' concern was Mr. Bryner's size.

reasonably concerned for their safety "given their awareness that [one of the adult children present at the home] was a peace officer and might have been armed").

Mr. Bryner admitted that he was struggling and trying to roll over to his side as he lay on the driveway. He acknowledged that he tried to lift his head. And although Mr. Bryner contends that he was only trying to move to a less painful position, considering the circumstances, a reasonable officer could have believed that Mr. Bryner was actively trying to resist law enforcement and evade arrest. Considering the circumstances, Deputy Potter did not use excessive force in his response to Mr. Bryner. Similarly, Deputy Miller's actions were reasonable when she assisted Deputy Potter. And that she shined a light on Mr. Bryner was reasonable because of the poor lighting, as previously described. Finally, because the deputies reasonably believed that Mr. Bryner was intoxicated, dangerous and repeatedly not following their directions, Deputy Miller and Deputy Potter reasonably focused on subduing Mr. Bryner before they responded to his requests for his pants.

The soundness of the court's conclusion that the deputies did not use excessive force on Mr. Bryner is supported by a comparison with case law. Consider, for example, <u>Mecham v. Frazier</u>, 500 F.3d 1200 (10th Cir. 2007), in which the Tenth Circuit held that officers did not use excessive forced when they used pepper spray to arrest a woman who was uncooperative during a traffic stop. As in Mr. Bryner's case, the initial alleged violation was not severe: The woman was pulled over for driving five miles over the speed limit and for failing to wear her seat belt. But as with Mr. Bryner, the woman in <u>Mecham</u> repeatedly ignored the officers warnings and instructions, effectively turning "what should have been a routine encounter . . . into a fifty-minute ordeal." <u>Id.</u> at 1204. Even after she was given a warning to get out of her car or face arrest, she refused. And because the woman was in control of the car and on a "narrow

shoulder of a busy interstate highway," the court recognized that the officers acted reasonably in spraying the woman with pepper spray and physically removing her from the car as she posed "a danger to herself or others." Id. at 1205. Although the Tenth Circuit noted that it would "hope[] for a different resolution" with the "benefit of hindsight," the fact remains that not "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 1206 (quoting Graham, 490 U.S. at 396); see also McNeil v. Anderson, No. 07-6132, 2007 WL 4290495, at *3 (10th Cir. Dec. 7, 2007) (holding that the officer had not used unreasonable force when, during a routine traffic stop, the plaintiff "escalated the potential safety threat by failing to comply" with the officer's orders, "struggling" with the officer, and then "actively resisting arrest"); Hinton v. City of Elwood, 997 F.2d 774, 777 (10th Cir. 1993) (holding that an officer did not use excessive force by using an "electrical stun gun" on a man after grabbing him and wrestling him to the ground as he was actively resisting arrest, including kicking and biting the officers); cf. Segura v. Jones, No 07-1013, 2007 WL 4385833 at *7-8 (10th Cir. Dec. 17, 2007) (concluding that the district court erred in denying an officer qualified immunity because the officer had acted reasonably when he pushed the plaintiff, who was suspected of shoplifting, against a wall and placed handcuffs on her, despite plaintiff's claim that her face hit the wall and the officer allegedly exacerbated her back injury when he pushed her).

      Considering the evidence in the light most favorable to Mr. Bryner, the court concludes that Deputy Miller and Deputy Potter's actions were objectively reasonable in light of the facts and circumstances that confronted them.

\>

\>

## CONCLUSION

Defendants' Motion for Partial Summary Judgment is GRANTED. (Docket No. 118.)

DATED this 13th day of June 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge